T–MARC, INC., a Florida corporation, d/b/a "Fantasy"; 8804, Inc., a Florida corporation, d/b/a "The Palace"; Plaza Suite, Inc., a Florida corporation, d/b/a "The Plaza Suite"; J. Marlin Corporation, a Florida corporation, d/b/a "Heavenly Bodies"; and Gemstone Entertainment, Inc., a Florida corporation, d/b/a "Diamond Dolls", Plaintiffs,

v.

PINELLAS COUNTY, a political subdivision of the State of Florida, and Everett Rice as Sheriff of Pinellas County, Florida, Defendants.

No. 91–600–CIV–T–17A.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 7, 1992.

Luke Charles Lirot, Law Office of Luke C. Lirot, Clearwater, Fla., for plaintiffs.

Howard Mark Bernstein, Susan Hamilton Churuti, Pinellas County Attys. Office, Clearwater, Fla., for defendants.

## ORDER REGARDING REPORT AND RECOMMENDATION

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on a report and recommendation issued by Magistrate/Judge Charles R. Wilson on June 19, 1992. This Court specifically referred the Plaintiffs' motion for preliminary injunction to the assigned magistrate/judge. After conducting an evidentiary hearing, the Magistrate/Judge recommended that the motion for preliminary injunction be granted in part and otherwise denied. Plaintiffs and Defendants ("the County") filed written objections to the report and recommendation on July 2, 1992 and June 30, 1992 respectively.

### FACTS

Plaintiffs concur in all factual findings. The County also concurs in the factual findings, except to inform the Court that the ordinance referenced in paragraph 10(d) of the findings of facts was amended, effective March 1992. The Court will address the effect of this amendment below. With the exception of the amendment pertaining to paragraph 10(b), this Court adopts the findings of facts contained in paragraphs 1–14 of the report and recommendation and incorporates them by reference.

### STANDARD OF REVIEW

Pursuant to Rule 6.02, Rules of the United States District Court for the Middle District of Florida, the parties had ten (10) days after service to file written objections to the proposed findings and recommendations, or be barred from attacking the factual findings on appeal. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (en banc). After objection, the findings of the Magistrate/Judge are entitled to be adopted unless they are found to be clearly erroneous.

### DISCUSSION

The Magistrate/Judge properly stated that Plaintiffs must prove the following four elements, as delineated in *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567 (5th Cir.1974) to prevail on their motion for preliminary injunction:

a) a substantial likelihood that plaintiffs will prevail on the merits of the claim;

b) irreparable injury unless an injunction is entered;

c) the threatened injury to plaintiffs outweighs the threatened harm that an injunction may cause to the County; and

d) the granting of a preliminary injunction will not be adverse to public interest.

In determining whether Plaintiffs have a substantial likelihood of prevailing on the merits, the report analyzed four main topics:

a) actual evidence of adverse secondary effects;

b) amortization deadlines and adequacy of acceptable alternative sites;

c) licensing and recordkeeping requirements; and

d) the "three-foot" rule.

Plaintiffs have raised several objections as to each of the four topics. The County has raised objection only regarding the third topic. The Court will address these objections in turn.

### A. Challenge One: Actual Evidence of Adverse Secondary Effects

■ Plaintiffs contend that the court improperly applied the analysis as set forth in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). For the following reasons, this Court adopts the Magistrate/Judge's conclusion that *Renton* is applicable when analyzing Ordinance 90–65. First, the ordinance at issue in *Renton* was a zoning ordinance, which prohibited any adult motion picture theater from locating within 1,000 feet of any residential zone, single or multi-family dwelling, church, or park, and within one mile of any school. *Id.* at 44, 106 S.Ct. at 927. Similarly, Ordinance 90–65 prohibits adult use establishments ("AUE's") from locating within 400 feet of any residentially zoned property, church, school, child care facility, public recreation area, or any other AUE. Because both the ordinance at issue in *Renton* and Ordinance 90–65 are zoning ordinances, which establish restrictions on the location of certain businesses, they are analogous. Thus, the Magistrate/Judge properly applied the *Renton* decision.

■ Second, Plaintiffs contend that the County's reliance on studies conducted by other cities, which evaluate the secondary effects of AUE's, was improper because the studies did not include comparisons of AUE's to other types of establishments. The County relied on the experiences of Seattle, Washington as set forth in *Northend Cinema, Inc. v. Seattle*, 90 Wash.2d 709, 585 P.2d 1153 (1978), *cert. denied sub nom. Apple Theatre, Inc. v. Seattle*, 441 U.S. 946, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1979), and on reports and studies from Amarillo, Texas; Phoenix, Arizona; New York City, New York; Detroit, Michigan;

Beaumont, Texas; Houston, Texas; Austin, Texas; Indianapolis, Indiana; and Oklahoma City, Oklahoma. The County is only required, under the First Amendment, to meet the standard imposed under *Renton*. In *Renton*, the Supreme Court stated that:

> The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem.

*Id.* at 51–52, 106 S.Ct. at 931. Thus, *Renton* only requires that the evidence relied upon is reasonably believed to be relevant to the problem. *Renton* does not require comparisons to other types of establishments. The Magistrate/Judge concluded, after reviewing each source relied upon by the County, that these sources discuss the same secondary effects the County addresses in its ordinances and are therefore relevant to the problems these ordinances address. Thus, under *Renton*, the County's reliance upon the experiences of other cities as support for its ordinances was proper.

■ Third, Plaintiffs contend that the County improperly relied on the studies because the County failed to recognize evidence which rebutted the existence of such adverse secondary effects. This argument fails under *International Eateries of Am., Inc. v. Broward County*, 941 F.2d 1157 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992). In *International Eateries*, the plaintiff failed to invalidate distance ordinances even where uncontradicted evidence existed that the AUE had not in fact caused any adverse effects on surrounding property values and that the property values had actually increased at a higher rate than before the opening of the AUE. *Id.* at 1163. *See also International Food & Beverage Systems v. Fort Lauderdale*, 794 F.2d 1520, 1527 (11th Cir.1986) (*Renton* does not require the city to actually experience deleterious effects before it may regulate nude

bars), *aff'd*, 838 F.2d 1220 (11th Cir.1988). Thus, this Court adopts the finding that the County is not required to actually experience the secondary effects prior to enacting the ordinance. Rather, the County may rely on the secondary effects suffered by other cities.

In sum, this Court adopts the Magistrate/Judge's finding that Plaintiffs have failed to establish a substantial likelihood of prevailing on this challenge to the ordinances.

### B. Challenge Two: Amortization Deadlines and Lack of Acceptable Alternative Sites

Plaintiffs contend that the report erred in concluding that amortization periods have been upheld so long as they do not terminate all reasonable avenues of communication. This Court rejects this conclusion in the report and finds that the appropriate question is whether the particular amortization period is reasonable. *See SDJ, Inc. v. City of Houston*, 636 F.Supp. 1359, 1371 (S.D.Tex.1986) (stating that the ultimate question is whether an amortization period is reasonable), *aff'd*, 837 F.2d 1268 (5th Cir.1988).

■ Moreover, Plaintiffs are correct in their assertion that recoupment of investment is a factor to consider when determining whether an amortization period is reasonable. *See SDJ*, 636 F.Supp. at 1371. Plaintiffs contend that the one-year amortization period is unreasonable because they have made substantial investments in their establishments. However, the court in *SDJ* upheld a six-month amortization period as reasonable even though the court recognized that the plaintiffs had made substantial investments in their businesses. *Id.* The court also noted that "preexisting nonconforming uses are not to be perpetual." *Id.* Thus, this Court concludes that the one-year amortization period contained in Ordinance 90–65 is reasonable. In fact, much shorter amortization periods have been upheld as reasonable. *See Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 830 (4th Cir.1979) (six-month amortization period was sufficient), *cert. denied*, 447 U.S.

929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980); *Northend Cinema, Inc. v. City of Seattle*, 90 Wash.2d 709, 585 P.2d 1153, 1160 (1978) (ninety-day amortization period was reasonable), *cert. denied sub nom. Apple Theatre, Inc. v. Seattle*, 441 U.S. 946, 99 S.Ct. 2166, 60 L.Ed.2d 1048 (1979).

■ Plaintiffs also contend that adequate alternative sites are not available and that the Magistrate/Judge erred in accepting the County's conclusion that 123 acceptable sites were available at the time the ordinance was enacted. Plaintiffs urge that the failure to consider several factors, such as land use designations, access, utilities, etc., render any determination of alternative sites inconclusive. In *SDJ*, plaintiffs made a similar argument. *SDJ*, 636 F.Supp. at 1370. The court there held that the law does not require defendants to confirm that the sites are economically and logistically viable, *except as it relates to the restrictions in the ordinance. Id.* (emphasis added). In the instant case, the County met this burden by presenting evidence that 123 alternative sites complied with the distance restrictions in the ordinance. Several courts have held that adequate alternative sites existed, even when much fewer than 123 sites were available. *See International Eateries of America, Inc. v. Broward County*, 941 F.2d 1157, 1165 (11th Cir.1991) (twenty-six sites allowed for reasonable alternative avenues of communication), *cert. denied*, —— U.S. ——, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992); *International Food & Beverage Systems v. City of Fort Lauderdale*, 794 F.2d 1520, 1526 (11th Cir.1986) (twenty-two sites adequate), *aff'd*, 838 F.2d 1220 (11th Cir.1988); *Southern Entertainment Co. of Fla., Inc. v. City of Boynton Beach*, 736 F.Supp. 1094, 1101 (S.D.Fla.1990) (eleven locations provided plaintiffs with a reasonable opportunity to operate their business within the city); *Function Junction, Inc. v. City of Daytona Beach*, 705 F.Supp. 544, 552 (M.D.Fla.1988) (twelve sites adequate).

The fact that several of the 123 sites might actually be unavailable or economically unfeasible is of no consequence. The County does not have to ensure that Plain-

tiffs will be able to obtain sites at bargain prices. *Renton*, 475 U.S. at 54, 106 S.Ct. at 932. Plaintiffs must fend for themselves in the real estate market, on an equal footing with other purchasers. *Id.* While the County must provide reasonably adequate alternative locations, the County is not required to guarantee Plaintiffs a profit at the expense of public interest. *Function Junction*, 705 F.Supp. at 552.

In sum, this Court adopts the Magistrate/Judge's finding that the one-year amortization period should be upheld. This Court also adopts the finding that the County has sufficiently demonstrated that adequate alternative sites exist for Plaintiffs to operate their businesses.

C. *Challenge Three: Licensing and Recordkeeping Requirements*

■ This Court adopts the Magistrate/Judge's conclusion that the four-prong test set forth in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) applies when determining whether the ordinance's disclosure requirements violate the First Amendment. To meet the *O'Brien* test, the ordinance must be within the constitutional power of government; it must further an important or substantial government interest; it must be unrelated to the suppression of free expression; and the incidental restrictions on First Amendment freedoms must be no greater than is essential to further that interest. *Id.* at 377, 88 S.Ct. at 1679. To ensure that the restrictions are no greater than essential to further the governmental interest, the disclosure requirements must be justified by the governmental interests expressed in the ordinance. *SDJ*, 636 F.Supp. at 1372 [citing *Genusa v. City of Peoria*, 619 F.2d 1203, 1216 (7th Cir.1980)]. Plaintiffs contend that certain disclosure requirements do not satisfy the *O'Brien* test for the following reasons.

■ First, Plaintiffs object to the finding that the County's request for information regarding persons involved in the day-to-day activities of an AUE is justified. This Court adopts the Magistrate/Judge's finding that the request for this informa-

tion is justified, as this information is often required for licensing purposes.

■ Second, Plaintiffs object to the required divulgence of any conviction of a "Specified Criminal Act" within the five-year period preceding the date of an application. This Court adopts the Magistrate/Judge's finding that this information could substantially further the County's interest in preventing crime at AUE's by facilitating the allocation of law enforcement resources to areas in which they are most needed. *See Bayside Enterprises v. Carson*, 470 F.Supp. 1140, 1148 (M.D.Fla. 1979).

Third, Plaintiffs object to the finding that the disclosure requirements, which place a greater burden on AUE's, are not a violation of the equal protection clause. This Court adopts the Magistrate/Judge's finding and agrees with the analysis set forth in *Ellwest Stereo Theater v. Boner*, 718 F.Supp. 1553, 1567 (M.D.Tenn.1989) (an ordinance is not unconstitutional simply because it imposes disclosure requirements on adult-oriented establishments that are not imposed on other businesses).

■ The County informs this Court that Ordinance 90–65 has been amended, effective March 1992, to require only that the requested information regarding employees be retained by the AUE and that the information need not be reported monthly to the County. The County argues that this amendment has reduced, if not eliminated, the need for a preliminary injunction. Even considering this amendment, this Court still adopts the Magistrate/Judge's conclusion that the County is only justified in its entitlement to the names, aliases, and dates of birth of all employees. The other information required to be disclosed under the ordinance is not substantially related to the purposes of the ordinance. While the amendment eliminates the monthly reporting requirement, the amendment requires that the operator of the AUE shall make the employee records available for inspection upon the request of a law enforcement officer, health department official, or a representa-

tive of the Department of Consumer Affairs. Since the information is still open for inspection, the disclosure requirements are still extremely intrusive and are not justified by the County's desire to prevent crime or the spread of communicable diseases. Thus, this Court adopts the Magistrate/Judge's conclusion that the Court should enjoin the County from requiring the AUE's to disclose or maintain records which disclose extensive information regarding their employees. However, the County is entitled to disclosure of the employees' names, aliases, and dates of birth.

In sum, this Court adopts the finding that Plaintiffs are not substantially likely to prevail on this challenge, with the exception of the above-mentioned recordkeeping requirements regarding employees.

### D. *Challenge Four: The "Three–Foot" Rule*

■ This Court adopts the Magistrate/Judge's conclusion that the Court should apply the *O'Brien* test, set forth above, to the ordinance's requirement that all employees, while engaged in the display or exposure of any specified anatomical areas, maintain a three-foot distance from any patron. The ordinance also prohibits patrons from "tipping" by placing currency in garters worn on the entertainer's legs. Plaintiffs object to the finding and contend that the ordinance fails to satisfy three elements of the four-part *O'Brien* test.

■ First, Plaintiffs object to the finding that the three-foot rule is unrelated to the suppression of free expression. This Court finds that the evidence supports the Magistrate/Judge's conclusion that the ordinance's three-foot requirement is directed at combatting the secondary effects of permitting close contact between the patrons and the dancers, and is unrelated to the suppression of free expression. Specifically, the ordinance is aimed at combatting the secondary effects of the spread of social diseases and crime, which are substantial government interests. The "Whereas" clauses, stated in Ordinance 91–8 and relied upon by the Magistrate/Judge in paragraph 23 of the report and recommenda-

tion, support the conclusion that the County is indeed attempting to combat the secondary effects of the spread of social diseases and crime. Further, the Magistrate/Judge relied on the following legislative findings included in Ordinance 91–8:

1.6.7 The prevention of sexual contact between patrons and employees at Adult Use Establishments is unrelated to the suppression of free expression but serves to address the concerns raised in the findings contained herein. Although the dancer's erotic message may be slightly less effective from three feet away, the ability to engage in the protected expression is not significantly impaired.

1.6.8 Separating dancers from patrons and prohibiting dancers and patrons from engaging in sexual fondling and caressing in adult cabarets would reduce the opportunity for prostitution transactions and thus should deter prostitution.

The Magistrate/Judge also relied on evidence the County presented to the Board of County Commissioners and the Court, that lewd and lascivious conduct often results from close contact between employees and patrons. The report further considered evidence from the sergeant supervising the Pinellas County Sheriff's Department's Vice Division that close contact between the patrons and dancers often degenerates into lewd and lascivious conduct and fosters prostitution. Plaintiffs object to reliance on the sergeant's testimony. This Court finds that the Magistrate/Judge properly considered the sergeant's testimony and overrules the objection.

■ Second, Plaintiffs object to the finding that the three-foot rule is narrowly tailored. This Court adopts the finding that the three-foot rule is narrowly tailored, as the rule does not greatly impair the dancer's expression. *See Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1061 (9th Cir.1986) (upholding an ordinance prohibiting tipping and requiring the dancers to remain at least ten feet from the patrons while dancing, reasoning that "[w]hile the dancer's erotic message may be slightly less effective from ten feet, the ability to engage in the protected expression is not

significantly impaired"); *Barnes v. Glen Theatre, Inc.,* —— U.S. ——, ——, 111 S.Ct. 2456, 2475, 115 L.Ed.2d 504 (1991) (White, Marshall, Blackmun & Stevens, JJ., dissenting) (the state can adopt restrictions that do not interfere with the expressiveness of nonobscene nude dancing performances if it is genuinely concerned with prostitution and associated evils: "For instance, the State could perhaps require that, while performing, nude performers remain at all times a certain minimum distance from spectators ...").

 Plaintiffs also contend that the three-foot rule has a "chilling" effect in that it prevents the patron and the dancer from achieving a personally determined level of expressive freedom. However, as stated in *Movie & Video World, Inc. v. Board of County Commissioners of Palm Beach County,* 723 F.Supp. 695, 700 (S.D.Fla.1989), "the chilling effect argument requires a factual basis upon which to conclude that First Amendment freedom would be thwarted." Plaintiffs have not shown such a factual basis.

Specifically, the three-foot rule does not limit access to view dancing, but rather regulates the manner in which the dancing may be viewed to prevent the secondary effects mentioned above. The County may regulate the manner of dancing in order to prevent those secondary effects. For example, the court in *Movie & Video World* upheld an open-door requirement on video booths showing sexually explicit materials, which was enacted to combat the spread of disease and to control crime. *Id.* at 702. Like the ordinance in the instant case, the open-door requirement regulated the manner in which sexually explicit material may be viewed. Also, the plaintiffs argued in *Movie & Video World* that the customers would not be able to achieve a desired level of expressive freedom, i.e., they would not be able to view the movies in private and would lose anonymity. *Id.* at 700. Despite this argument, the court stated that the open-door requirement met the *O'Brien* test, since the ordinance merely regulated the manner in which the movies could be viewed and did not prevent the patrons

from viewing the films. *Id.* Likewise, the "chilling effect" argument advanced by Plaintiffs in the instant case must fail since the ordinance does not prevent the patron and the dancer from expression, but rather regulates the method in which the dancing may be presented.

In sum, this Court adopts the Magistrate/Judge's conclusion that the three-foot rule meets the *O'Brien* test, finds that this conclusion is supported by the evidence, and adopts the conclusion that Plaintiffs have not demonstrated a substantial likelihood of prevailing on this challenge.

### IRREPARABLE INJURY, BALANCING, PUBLIC INTEREST

Since this Court adopted the Magistrate/Judge's finding that Plaintiffs have demonstrated a substantial likelihood that certain disclosure requirements regarding employees will be held unconstitutional, this Court must now address the other three elements required for granting injunctive relief. First, this Court adopts the finding that irreparable harm will result if these requirements are enforced. Second, this Court adopts the finding that the threatened injury to Plaintiffs outweighs the injury that an injunction may cause the County. Specifically, if Plaintiffs continue to disclose the information, and then later succeed on the merits, the information will already have been disclosed. Even the amendment, which does not require monthly reporting to the County, does not remove the threatened injury because sections 3.1.3 and 3.1.4 of the amendment provide that the operator of an AUE must keep the employee information on hand and disclose it upon request to a law enforcement officer, health department official, or a representative of the Department of Consumer Affairs. Thus, the threat of disclosing the information, and then later succeeding on the merits, is still present. Finally, the public interest would not be disserved by an injunction since the remainder of the ordinance would remain in full force and the employee disclosure requirements are not critical to achieve the desired purposes of the ordinance.

**1508**

Accordingly, it is ORDERED that the objections filed by Plaintiffs and Defendants be overruled; the report and recommendation be adopted; the motion for preliminary injunction of Plaintiffs as to the disclosure requirements addressed herein be granted and denied in all other respects; and Plaintiffs shall have five (5) days to provide the Court with an order granting preliminary injunction in accord with this order.

DONE and ORDERED.