Behnam **ZANGANEH**, et al.

v.

William R. **HYMES**.

Civ. No. Y93–2953.

United States District Court,
D. Maryland.

Feb. 2, 1994.

Ransom J. Davis, Baltimore, MD, and Thomas M. Meachum, Ellicott City, MD, for plaintiffs.

Kathryn M. Rowe and Evelyn O. Cannon, Baltimore, MD, for defendant.

JOSEPH H. YOUNG, Senior District Judge.

## MEMORANDUM

Plaintiffs, Behnam Zanganeh, 9920 Corporation, Laurel Entertainment, Inc., Deborah

M. Viola, Kim Marie Lewandowski and Frederick Byron Scheler seek injunctive relief challenging the constitutionality of Maryland General Public Law Article 2B, §§ 86(m)[1] and 71A(d)(2).[2] Violation of these provisions is a misdemeanor criminal offense punishable by "a fine not exceeding $5,000 for each violation." Md.Gen.Pub.Law Stat.Ann. Article 2B, § 86(m)(2). Defendant, William R. Hymes, State's Attorney for Howard County, has applied these statutory provisions to plaintiffs' establishment which allows nude dancing and permits patrons to bring alcoholic beverages onto the premises.

## I.

On April 29, 1991, Zanganeh, along with two other individuals, formed 9920 Corporation for the purpose of operating restaurants and nightclubs. During the summer of 1991, Zanganeh obtained a liquor license, hired exotic dancers, managers and employees, and opened Good Guys Bar & Grill ("Good Guys") in North Laurel, Howard County, Maryland. 9920 Corporation holds the lease on the building where Good Guys is located.

Initially, Good Guys sold alcoholic beverages and presented dancers wearing bikinis. In late 1992, an investigation by the Howard County Police revealed dancers were touching themselves in an illegal manner and that improper contact was occurring between dancers and patrons. The Board of License Commissioners then suspended Good Guys' liquor license and imposed a $1,000 fine. Zanganeh responded by surrendering the liquor license, allowed the dancers to perform nude and allowed patrons to bring alcoholic beverages onto the premises. Upon entering Good Guys, the waitresses would take possession of the alcohol and would provide the patrons with a beverage while they were being entertained.

Beginning in June 1993, Zanganeh required each patron to submit a membership application before entering the premises. A member must be at least twenty-one years old with no felony conviction. Each member is assessed a yearly membership fee of $10.00 and a $10.00 fee for each visit to the facility.

On June 28, 1993, the Chief of Police of Howard County asserted in a letter addressed to Zanganeh that Good Guys was violating Article 2B, § 86(m). On the same day, Kathryn M. Rowe, an Assistant Attorney General of Maryland for Howard County rendered an opinion letter that stated "Good Guys" was "a place of public entertainment" within the meaning of Article 2B, § 86(m)(1), and that the consumption of alcoholic beverages at Good Guys in the presence of nude dancers should be prohibited. Rowe also found that Good Guys was subject to the limitation of Article 2B, § 71a(d)(2) requiring a distance of six feet between the nude dancer and the patrons.

Dancers were then required to wear G-strings and were allowed to perform with their breasts exposed on a stage that kept patrons six feet from the dancers.

On December 21, 1993, Laurel Entertainment, Inc., ("LEI") was incorporated for the purpose of organizing the current 6,000 members and future members of Good Guys, and to approve 9920 Corporation's right to operate Good Guys. Zanganeh, and Frederick Scheler and Eric Washington, Managers of Good Guys, were appointed as temporary Directors. On December 23, 1993, the Temporary Directors of LEI and counsel for the Corporation, Thomas M. Meachum, held a meeting and decided to hold elections for LEI's Board of Directors on December 29, 1993. On that day, thirty-two members of Good Guys elected Zanganeh, Scheler, Wash-

---

1. Article 2B, § 86(m) provides:
 In Baltimore, Charles, Howard and Prince George's Counties, alcoholic beverages may not be brought into any premises and consumed or transferred if the premises constitute a *place of public entertainment* and the entertainment is the type listed under § 71A(a)(1) through (4) of this article.
 Md.Pub.Gen.Law Code Ann. Art. 2B, § 86(m) (emphasis added).

2. Section 71A(d)(2) provides:
 With respect to entertainment provided, a person may not ... permit any entertainer whose breasts and/or buttocks are exposed ... to perform closer than six feet from the nearest patron.
 Md.Pub.Gen.Law Code Ann. Art. 2B, § 71A(d)(2).

ington, Kim Lewandowski, an employee of 9920 Corporation, and Patrick McDermott, Jonathan Mills, and Christopher Johnson, members of Good Guys, to the Board. This newly elected Board adopted the LEI's By–Laws.

In addition to memorializing the membership rules already implemented at Good Guys, the LEI By–Laws require a quorum of the Board to meet every Monday to review and approve membership applications. The By–Laws also require LEI to pay 9920 Corporation rent and collect the yearly membership fee. The user-fees and other monies derived from beverages, food and entertainment are collected by 9920 Corporation.

On November 4, 1993, as a result of the hearing on the motion for a preliminary injunction, this Court enjoined enforcement of the challenged portion of the statutes at issue and scheduled a trial for January 13–14, 1994.

## II.

■ Pursuant to 28 U.S.C. § 2201, plaintiffs first seek a ruling that Good Guys is not a "place of public entertainment" subject to Article 2B, § 86(m). It would be illogical to conclude that people who pay for admission to Good Guys do not attend for entertainment purposes. The members of LEI come there to be entertained by playing pool, gambling or watching women nude dance. *See United States v. Johnson Lake Incorporated,* 312 F.Supp. 1376, 1380 (S.D.Ala.1970). Thus, Good Guys is a place of entertainment.

■ When determining if an establishment is a private or public club, courts consider whether it is owned and controlled by its members. *See Bell v. Kenwood Golf & Country Club, Inc.,* 312 F.Supp. 753, 757–58 (D.Md.1970) However, the critical factor is whether the club's membership is truly selective. *See Wright v. Salisbury Club, Ltd.,* 632 F.2d 309, 312–13 (4th Cir.1980); *Brown v. Loudoun Golf & Country Club, Inc.,* 573 F.Supp. 399, 402–03 (E.D.Va.1983).

■ The governing officers of LEI were elected by thirty-two of the six thousand members. Five of the thirty-two members are employees of 9920 Corporation including the elected President who is also a Manager of Good Guys. The seven members of the LEI Board of Directors, four of whom are employees of 9920 Corporation, adopted the LEI By-laws without approval by a quorum of the members. The by-laws incorporated a lease agreement that provided 9920 Corporation with the exclusive right to operate Good Guys for seven years. Significant organizational decisions are made without consulting the LEI members and the decisions are strongly influenced by employees of 9920 Corporation, which is likely to profit from such decisions. Thus, Good Guys is not controlled by LEI members.

Prospective members of Good Guys are required to complete a membership application form and, prior to being approved as a member, must pay a yearly membership fee. After paying an additional user fee, these patrons may immediately enter the premises. Although the LEI By-laws require the Board to review and approve membership applications, the minutes from the LEI meetings do not reflect that the Board fulfilled this obligation. Further, the limit on membership is based on the capacity of the building. Thus, Good Guys is not selective in its membership, is not a private club and is subject to Article 2B, § 86(m).

■ Plaintiffs also contend that Article 2B § 86(m) violates their rights under the First Amendment to the United States Constitution and Article 40 of the Declaration of Rights of the Maryland Constitution.[3] When expressive conduct is involved rather than pure speech, the four part test from *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) applies. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, ——, 111 S.Ct. 2456, 2468, 115 L.Ed.2d 504 (1991) (Souter, J., concurring). *O'Brien* provides:

a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an impor-

---

**3.** Article 40 has been held to be substantially similar to the First Amendment of the United States Constitution and there is no evidence that

it gives greater protection to expressive conduct than does the First Amendment.

tant or substantial government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restrictions on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679.

■ "[T]he broad powers of the states to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweigh[s] any First Amendment interest in nude dancing." *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 717, 101 S.Ct. 2599, 2602, 69 L.Ed.2d 357 (1981); *accord, Newport v. Iacobucci,* 479 U.S. 92, 97, 107 S.Ct. 383, 386, 93 L.Ed.2d 334 (1986). Thus, Article 2B § 86(m) is a proper exercise of Maryland's regulatory powers.

■ Plaintiffs assert that defendant has not shown that Article 2B § 86(m) furthers an important or substantial government interest in Howard County. The legislative history reveals that the General Assembly was concerned with the secondary effects on the surrounding community where clubs offered nude dancing and permitted the consumption of alcohol. *See Barnes,* 501 U.S. at ——, 111 S.Ct. at 2469 (Souter, J., concurring) (the state's interest in combating secondary effects caused by adult entertainment establishments is substantial).

Article 2B, § 86(m) was extended into Howard County to avoid or mitigate the secondary effects that arose in Baltimore and Charles Counties including rowdiness, disturbance of the public peace and public urination. *See Barnes,* 501 U.S. at ——, 111 S.Ct. at 2470 (Souter, J., concurring) (Nude dancing is likely to produce "the same pernicious secondary effects as the adult films displaying 'specified anatomical areas' at issue in *Renton [v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)]. I do not believe that a State is required affirmatively to under take to litigate this issue repeatedly in every case"); *International*

*Eateries of Am., Inc. v. Broward County,* 941 F.2d 1157, 1162 (11th Cir.1991). Article 2B § 86(m) as applied to Howard County furthers a substantial government interest.

■ Plaintiffs next argue that Article 2B § 86(m) is broad and over-reaching because it limits the dancers' freedom of expression by preventing the patron and the dancer from achieving a personally determined level of expressive freedom. Article 2B § 86(m) does not ban nude dancing, but prohibits the consumption of alcohol in premises where nude dancing is occurring and regulates the manner in which nude dancing is performed. The six foot requirement does not impair the ability of the dancer to perform. *See D.G. Restaurant Corp. v. Myrtle Beach,* 953 F.2d 140, 147 (4th Cir.1991) (ordinance is narrowly tailored where it prohibited "nudity by limiting only the exposure of the most private anatomical part of the male and female body"); *Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1061 (9th Cir.1986) (upholding an ordinance requiring the dancers to remain at least ten feet from the patrons while dancing, reasoning that "[w]hile the dancer's erotic message may be slightly less effective from ten feet, the ability to engage in the protected expression is not significantly impaired"); *see also, Movie & Video World, Inc. v. Board of County Comm'ns,* 723 F.Supp. 695, 700 (S.D.Fla.1989); *T–Marc, Inc. v. Pinellas County,* 804 F.Supp. 1500, 1507 (M.D.Fla. 1992). Article 2B, § 86(m) does not impair the dancer's freedom of expression.

■ Plaintiffs also assert that Article 2B § 86(m) violates the Equal Protection Clause of the Fourteenth Amendment and Article 24 of the Declaration of Rights of the Maryland Constitution because it applies in only four counties and not state-wide. "Territorial uniformity is not a constitutional requisite." *Salsburg v. Maryland,* 346 U.S. 545, 552, 74 S.Ct. 280, 284, 98 L.Ed. 281 (1954). The Equal Protection Clause relates to equality between persons rather than between areas. *Id.* at 551, 74 S.Ct. at 283.[4] As long as the

---

4. There is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law and its method of procedure for the rest of the State, there is nothing in the Constitution of the United States to prevent it doing

persons within the jurisdiction at issue are treated equally and the statute does not conflict with constitutional limitations, there is no violation of the Equal Protection Clause. *See Id.* at 553, 74 S.Ct. at 284.

 There is also a presumption in favor of the validity of state regulation in the area of liquor control. *See California v. La Rue,* 409 U.S. 109, 118–19, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972). Although the state's power is not absolute, its power to regulate liquor "allows the widest discretion and is subject to minimal demands of the Fourteenth Amendment's ... equal protection requirement." *Parks v. Allen,* 426 F.2d 610, 613 (5th Cir.1970).

The statute applies in each county in the "Baltimore–Washington" corridor[5] where secondary effects are more likely to occur. This is the reason it has not been applied to counties in the eastern and western parts of Maryland. The statute applies to Baltimore, Charles, Howard and Prince George's Counties. It does not include Anne Arundel and Montgomery Counties, which are also part of the corridor. However, such a restriction is not necessary for these two counties because they have laws barring consumption of alcoholic beverages in unlicensed places of public entertainment. *See* Md.Gen.Pub.Law Stat. Ann. Article 2B, §§ 86(m)(2), 37(c).

Finally, plaintiffs contend that the enforcement of Article 2B, § 86(m) has been targeted at Zanganeh because of his nationality in violation of the Fourteenth Amendment. However, there is no evidence that the defendant conspired with the Howard County Police Department to curtail or disrupt Zanganeh or his business in Howard County. Thus, this contention is without merit.

### ORDER

In accordance with the attached Memorandum it is this 2nd day of February 1994, by the United States District Court for the District of Maryland, ORDERED:

1. That the injunctive relief granted by Order dated November 4, 1993 BE, and the same IS, hereby vacated;

2. That the judgment BE, and the same IS, hereby entered in favor of the Defendant; and

3. That a copy of this Memorandum and Order be mailed to counsel for the parties.

---

5. The Supreme Court in *Salsburg* recognized the unique nature of the "Baltimore–Washington" corridor and that the state, because of population concentrations, may find "reason to prescribe, at least on an experimental basis, substantive restrictions ... that would differ from those elsewhere in the State." *Salsburg,* 346 U.S. at 553, 93 S.Ct. at 285.

so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws.... It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.
*Salsburg,* 346 U.S. at 551, 93 S.Ct. at 283.