DLS, INC., d/b/a Diamonds and Lace Showbar, a Tennessee Corporation; Ann Martin; Kim Tyndall; and Karen Chadwick, Plaintiffs,

v.

CITY OF CHATTANOOGA; City Council of Chattanooga, Tennessee; Mayor Gene Roberts; Chairman Don Eaves; Councilpersons Mai Bell Hurley, David Crockett, David Disteffano, Yuseff Hakeem, John Lively, Leamon Pearce, Marti Rutherford, Ron Swafford; and Chief of Police Ralph Cothran, Defendants.

No. 1:95–cv–090.

United States District Court, E.D. Tennessee.

July 12, 1995.

Jerry H. Summers, Chattanooga, TN, for plaintiffs.

Phillip A. Noblett, W. Shelley Parker, Jr., Chattanooga, TN, for defendants.

## *MEMORANDUM*

### I.

EDGAR, District Judge.

Plaintiff DLS, Inc. ("DLS"), a Tennessee corporation, operates an "adult cabaret" in Chattanooga, Tennessee, which offers the public live semi-nude dancing by females. Plaintiff Ann Martin is the sole stockholder of DLS. Plaintiffs Karen Chadwick and Kim Tyndall are employees of DLS. The business operated by DLS is known as "Diamonds and Lace."

The plaintiffs bring this action under 42 U.S.C. § 1983 for damages as a consequence of deprivation of their constitutional rights. They seek a declaratory judgment that Chattanooga's adult-oriented establishment ordinance, Ordinance 8601, as amended (herein sometimes called the "Ordinance") is unconstitutional. They also seek injunctive and other relief. Evidence and argument have been presented to the Court.

In general, the Ordinance establishes procedures for licensing of certain adult-oriented establishments and a permitting procedure for employees and entertainers at those businesses. The Ordinance also regulates certain sexual conduct at these businesses and specifies certain physical structural requirements for them.

This is not the first time this Court has had occasion to review the Ordinance. In *Broadway Books, Inc. v. Roberts*, 642 F.Supp. 486 (E.D.Tenn.1986), this Court, with some exceptions, upheld the constitutionality of the Ordinance against a challenge presented by an "adult bookstore," which along with "adult cabarets," "adult motion picture theaters," and "adult mini-motion picture theaters" are "adult-oriented establishments" under the terms of the Ordinance. *See* Chattanooga City Code § 11–422(a) (defining "adult-oriented establishment"). While this Court in *Broadway Books* did address the Ordinance in general, many of

the Court's findings related to law enforcement problems and health conditions at adult bookstores, not adult cabarets. Since the Court's *Broadway Books* decision, the Ordinance has been amended several times, although its general structure remains intact.

## II.

Although the plaintiffs in this case have asserted in part that their First Amendment rights have been "chilled" because they have not been permitted to engage in totally nude dancing, this case is not about nude dancing. Ordinance 8601 does not prohibit nude dancing. While nude dancing is proscribed by another Chattanooga ordinance, § 25–85 of the CHATTANOOGA CITY CODE, and by the state indecent exposure statute, TENN.CODE ANN. § 39–13–511, these pieces of legislation have not been challenged by the plaintiffs in this case.

This suit was triggered by a recently enacted amendment to Ordinance 8601 which has been referred to as the "six-foot rule." This amendment reads in its entirety as follows:

No entertainer, employee or customer shall be permitted to have any physical contact with any other on the premises during any performance and all performances shall only occur upon a stage at least eighteen inches (18″) above the immediate floor level and removed at least six feet (6′) from the nearest entertainer, employee and/or customer.

CHATTANOOGA CITY CODE § 11–435(d).

The dancers at DLS are supposed to conform their attire to the language that defines an "adult cabaret" under the Ordinance. That language is:

Adult cabaret is defined to mean an establishment which features as a principle [*sic*] use of its business, entertainers and/or waiters and/or bartenders who expose to public view of the patrons within said establishment, at any time, the bare female breasts below a point immediately on top of the areola, human genitals, pubic region,

or buttocks, even if partially covered by opaque material or completely covered by translucent material; including swim suits, lingerie or latex covering. Adult cabarets shall include commercial establishments which feature entertainment of an erotic nature including exotic dancers, strippers, male or female impersonators, or similar entertainers.

*Id.* § 11–422(e). By using latex paste and makeup, dancers make their breasts appear bare. They strip down to a G-string or "T-bar." Their status could be described as "mostly nude."

■ Dancing at Chattanooga adult cabarets is at least "marginally" protected as "expressive conduct within the outer perimeters of the First Amendment." *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991) (plurality opinion). In *Barnes,* four members of the five-member Supreme Court majority applied a lower level of First Amendment scrutiny to nude dancing than would be used to evaluate restrictions on other forms of expression, such as political debate. *Id.* at 584, 111 S.Ct. at 2469–70 (Souter, J., concurring).[1]

■ It is noteworthy, however, that freedom of expression may not be the primary issue here. Throughout the trial, the plaintiffs expressed at least as much concern about the ability of DLS and its dancers to make money as it did with their ability to express themselves. As counsel for DLS remarked, the Ordinance "will have a very chilling effect upon … the free enterprise system." If "free enterprise" is what is being regulated here, the City has a much freer hand. It has long been held that a municipality's exercise of the police power is not normally limited by contentions that the municipality is interfering with one's freedom to contract, or right to engage in "free enterprise." *Schmidinger v. City of Chicago,* 226 U.S. 578, 589–90, 33 S.Ct. 182, 185, 57 L.Ed. 364 (1913).

■ Nevertheless, because dancing is involved, precedent requires that the Ordi-

---

1. The fifth member of the majority, Justice Scalia, did not see the prohibition of nude dancing as presenting a First Amendment issue. *Barnes,*

501 U.S. at 572–81, 111 S.Ct. at 2463–68 (Scalia, J., concurring).

nance be examined through the prism of the First Amendment. In *Broadway Books,* this Court found that while the Ordinance "may have some impact on constitutionally protected First Amendment activity ... it was not enacted for the purpose of limiting speech on the basis of its content." 642 F.Supp. at 490. The Court has heard nothing that would alter this conclusion. Thus, as was done in *Broadway Books,* this Court will subject the Ordinance to a time, place, and manner analysis as specified in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

The Sixth Circuit recently applied the *O'Brien* test to a Memphis, Tennessee ordinance requiring licensing of sexually oriented businesses. *See East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 226 (6th Cir. 1995). The prevailing opinions in *Barnes* also applied the *O'Brien* test to nude dancing. *See Barnes,* 501 U.S. at 567, 111 S.Ct. at 2461 (plurality opinion); *id.* at 582, 111 S.Ct. at 2468–69 (Souter, J., concurring). Under the *O'Brien* test,

> To withstand constitutional scrutiny, the regulation must (1) be within the constitutional powers of government; (2) further a substantial government's interest; (3) the government interest must be unrelated to the suppression of free expression; and (4) regulation must pose an incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest.

*East Brooks Books,* 48 F.3d at 226.

The City has "a legitimate and substantial interest in controlling the secondary effects associated with sexually oriented businesses, and such regulation is within the constitutional powers of government." *Id.* What are the secondary effects here? In *Broadway Books,* this Court made findings that the Chattanooga Ordinance furthered a substantial government interest. Those findings related to adult bookstores which featured videos shown in closed booths. Semen, blood, used condoms, defecation, and urine on the floors of those booths were found to be a health hazard justifying an ordinance provision making the booths visible from the common area of the bookstores. 642 F.Supp.

at 491. In addition, the adult bookstores had generated arrests for numerous sex-related and other crimes. *Id.* As a result, the Ordinance's "open booth" requirement was found to further a substantial government interest. *Id.* That holding has been replicated in numerous cases. *See, e.g., Mitchell v. Commission on Adult Entertainment Establishments,* 10 F.3d 123, 142 (3d Cir.1993); *Bamon Corp. v. City of Dayton,* 923 F.2d 470, 473 (6th Cir.1991); *Postscript Enters. v. City of Bridgeton,* 905 F.2d 223, 227 (8th Cir.1990); *Doe v. City of Minneapolis,* 898 F.2d 612, 617 (8th Cir.1990); *Berg v. Health & Hosp. Corp. of Marion County, Ind.,* 865 F.2d 797, 802 (7th Cir.1989); *FW/PBS, Inc. v. City of Dallas,* 837 F.2d 1298, 1304 (5th Cir.1988), *vacated in part on other grounds,* 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990); *Wall Distribs., Inc. v. City of Newport News, Va.,* 782 F.2d 1165, 1169 (4th Cir.1986); *Ellwest Stereo Theatres, Inc. v. Wenner,* 681 F.2d 1243, 1246 (9th Cir.1982); *Grunberg v. Town of East Hartford, Conn.,* 736 F.Supp. 430, 437 (D.Conn.1989), *aff'd,* 901 F.2d 297 (2d Cir.1990) (per curiam); *Movie & Video World, Inc. v. Board of Comm'rs of Palm Beach County, Fla,* 723 F.Supp. 695, 699 (S.D.Fla.1989); *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585, 589 (E.D.Wis.1988).

The Ordinance is challenged in this case by an "adult cabaret," another genré of "adult-oriented establishment." Plaintiff Ann Martin, the owner of DLS, owned and operated in Chattanooga an establishment known as the "Classic Cat" during the late 1970's and early 1980's, before enactment of the Ordinance. Other owners operated the Classic Cat in subsequent years. Had the Ordinance been in effect, the Classic Cat would have been an "adult cabaret" under the Ordinance's definition. In 1979, the Chattanooga Police Department was called to the Classic Cat 262 times; 1980—73 times; 1981—42 times; 1982—162 times; 1983—94 times; and 1984—55 times. Most of the calls were for run-of-the-mill assaults and related crimes. However, included were sex crimes in the form of one rape, one attempted rape, three prostitutions, and two indecent exposures. With this history, the Ordinance was

originally enacted in 1986. Thus, in 1986 the Ordinance was properly directed at crime and a health hazard (adult bookstores) and at crime (adult cabarets). The Court in *Broadway Books* found that the Ordinance met all of the *O'Brien* requirements with respect to adult bookstores. While no such determination was then made as to the Ordinance's application to adult cabarets, it is clear that in 1986 the Ordinance with respect to adult cabarets met the first two *O'Brien* requirements. It was within the constitutional powers of government and furthered a substantial government interest. The issue in this case boils down to whether the Ordinance, as now applied to adult cabarets, meets the third and fourth *O'Brien* requirement. Is the Ordinance directed at a governmental interest that is unrelated to the suppression of free expression? Does it pose an incidental burden on First Amendment freedoms that is not greater than is essential to further the governmental interest?

■ Several adult cabarets have operated in Chattanooga in recent years. Currently there are four of them—DLS (Diamonds and Lace), Wild Hearts, Night Haven II, and BJ's Play Pen. Others have come and gone. Much of what occurs at these establishments is what might be described as mostly nude, erotically expressive dancing on a stage. If that were the sum total of adult cabaret entertainment activity, it is doubtful that this lawsuit would have occurred. However, since 1993, undercover agents, acting on behalf of the Chattanooga Police Department, have frequented Chattanooga's adult cabarets. They have either experienced themselves or observed a considerable amount of bodily contact between patrons and dancers. Many clubs offer sofa/couch, or "VIP" dances, where the patron is taken to a remote semi-private area. In these "dances," the female dancers sometimes do such things as sit in the patron's lap; place their breasts against the patron's face; while physical contact is maintained, gyrate in such a manner as to simulate sexual intercourse; breathe heavily into a patron's groin area; and bite and gnaw at, as well as fondle, the genitals of male patrons. There have also been instances where dancers, both during the semi-private dances and on a stage, have pulled

patrons' faces into their vaginal areas. In one instance, a dancer performed a "whipped cream" dance wherein patrons were allowed to spoon feed themselves with whipped cream that had been spread on the breasts, vaginal, and anal areas of the dancer. In other instances, males have placed a peeled banana between their legs while female "dancers" have eaten the banana.

■ The "six foot rule" is obviously directed at preventing this kind of *conduct*. It cannot be said that this conduct is protected as free expression. A trip to one of Chattanooga's adult cabarets can be much more than merely watching an erotically expressive dance. It can be a publicly displayed, tactile, body contact, sexual experience. Some of this conduct would violate Tennessee's public indecency statute, which prohibits, among other things, the public fondling of genitals. TENN.CODE ANN. § 39–13–511(a)(1)(A)(iii). Although no actual sexual intercourse is involved, contact titillation at adult cabarets is tantamount to prostitution, which is defined in Tennessee as "engaging in, or offering to engage in, sexual activity as a business." *Id.* § 39–13–512(5). In any event, as this Court's predecessor, Frank W. Wilson, said a number of years ago, "Regulation of public and undisciplined sexual conduct is clearly within the police power of the state." *Southeastern Promotions, Inc. v. Conrad,* 341 F.Supp. 465, 477 (E.D.Tenn. 1972), *rev'd on other grounds,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The "six foot rule" clearly meets each of the first three elements of the *O'Brien* test.

■ The fourth *O'Brien* element is that the regulation must pose an incidental burden on First Amendment freedoms that is no greater than is essential to further the government interest. A number of courts have upheld dancing distance requirements. *BSA, Inc. v. King County,* 804 F.2d 1104, 1110–11 (9th Cir.1986) (six feet); *Kev, Inc. v. Kitsap County,* 793 F.2d 1053, 1061 (9th Cir.1986) (ten feet); *Zanganeh v. Hymes,* 844 F.Supp. 1087, 1091 (D.Md.1994) (six feet); *T–Marc, Inc. v. Pinellas County,* 804 F.Supp. 1500, 1506 (M.D.Fla.1992) (three feet). Whatever communicative element mostly nude dancing

may have will only be slightly less effective from six feet away. Chattanooga's ordinance does not hinder anyone's view of dancing; it only puts moderate limits on how it may be viewed. This is nothing more than was done in *Broadway Books* when an "open booth" requirement was found to be a reasonable means of regulating the way sexually explicit material is viewed in adult bookstores. *Broadway Books,* 642 F.Supp. at 492; *see T–Marc,* 804 F.Supp. at 1507.

◼ Plaintiffs contend that Ordinance 10718 (the amendment to Ordinance 8601 which adds the six-foot requirement) offends the First Amendment because there is little or no legislative history that the Chattanooga City Council was concerned with public sexual contact. Clearly such legislative history is not indispensable to the Ordinance's validity. In *Barnes,* Justice Souter[2] said, in response to a similar argument about Indiana's prohibition of nude dancing:

> This asserted justification for the statute may not be ignored merely because it is unclear to what extent this purpose motivated the Indiana Legislature in enacting the statute. Our appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional.

501 U.S. at 582, 111 S.Ct. at 2469. Thus, the City of Chattanooga has no burden to produce legislative history to show secondary effects motivation. *See Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 135 (6th Cir. 1994) (concluding that district court erred in imposing burden on the defendant City to present affirmative evidence of secondary effects motivation). In any event, the City Council's intent is self-evident. The Court does not need legislative history to tell it that the six-foot requirement, if enforced, will limit sexual contact in adult cabarets.

DLS argues that compliance with the six-foot requirement[3] would be costly and that dancers will lose income because patrons will no longer be able to stuff tips in their garters. Various construction alternatives, however, exist, both expensive and inexpensive, that could bring DLS into compliance. For instance, a brass rail could be set up around the dancing platforms for under $5,000. This is not oppressive. The dancers can surely find other means to collect tips.

The six-foot requirement in the Ordinance is not a burden on First Amendment freedoms greater than is essential to further a legitimate government interest. It meets all the facets of the *O'Brien* test as a reasonable place and manner regulation.

### III.

Plaintiffs, in shotgun fashion, have challenged virtually every paragraph, jot, and title of the Ordinance as being either vague, overbroad, subject to unbridled discretion, or some other constitutional infirmity. Several of the provisions about which the plaintiffs complained have previously been upheld by this Court. *See Broadway Books,* 642 F.Supp. at 492–94 (upholding provisions regarding disclosure of certain information on license applications, license fee requirement, and respondeat superior). Plaintiffs have presented nothing that warrants revisiting these determinations.

◼ Among the contentions of the plaintiffs is that various provisions of the Ordinance do not provide procedural safeguards. Because the City in issuing licenses and permits does not pass judgment on the content of protected expression, the Ordinance's license and permit requirements do not present the threat to First Amendment rights posed by censorship schemes. *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 229, 110 S.Ct. 596, 606–07, 107 L.Ed.2d 603 (1990); *East Brooks Books,* 48 F.3d at 224. Nonetheless, certain procedural safeguards are required.

---

**2.** Because Justice Souter's concurring opinion in *Barnes* was on the narrowest grounds of those which made up the majority, the Court is to view that opinion as the holding of the Supreme Court. *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977);

*Triplett Grille, Inc. v. City of Akron,* 40 F.3d 129, 132–34 (6th Cir.1994).

**3.** DLS already complies with the 18–inch height requirement specified in the Ordinance.

There must be (1) specified and reasonable time limits on the decisionmaker; and (2) the possibility of prompt judicial review. *City of Dallas,* 493 U.S. at 228, 110 S.Ct. at 606; *East Brooks Books,* 48 F.3d at 224; *Redner v. Dean,* 29 F.3d 1495, 1500 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995).

■ DLS is properly licensed, and the individual plaintiffs are properly permitted under the Ordinance. They have never had any substantial difficulty in acquiring licenses or permits. There is no evidence that a license or permit held by them has ever been revoked. However, they nonetheless have standing to challenge licensing procedural requirements on their contention that those requirements place unbridled discretion in a government official. *See City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988) ("[O]ur cases have long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license."), *cited in, East Brooks Books,* 48 F.3d at 224.

### Licensing Procedure

■ The Ordinance's licensing provisions are contained in §§ 11–424 and 11–425. After an application for an adult-oriented establishment is filed with the City Treasurer,[4] it is to be distributed promptly to the Chattanooga Police Department for investigation. CHATTANOOGA CITY CODE § 11–424(a). The results of the investigation must be filed in writing with the City Treasurer no later than twenty days after the date of the application. *Id.* § 11–425(b). Within ten days after receiving the results of the investigation, the City Treasurer must notify the applicant whether the application is granted, denied, or held for further investigation. *Id.* § 11–424(c). Any investigation shall not exceed an additional thirty days. *Id.* An applicant has

ten days to request a hearing before the City Council on an application denial. *Id.* § 11–424(d). While the Ordinance does not specify that the City Council must meet within any specified period of time, the Ordinance can be construed to require a meeting within a reasonable period of time. If the City Council denies a license application, the City Attorney *shall* within five days institute suit for declaratory judgment in state court for review of the denial. *Id.* It is very clear that the Ordinance's licensing procedure places specified brief time limits on the decisionmakers and does provide for prompt judicial review. This procedure, therefore, does not contravene the First Amendment.

### Permitting Procedure

■ Employees and entertainers of adult-oriented establishments are required by §§ 11–427 and 11–428 of the Ordinance to obtain permits to be so employed. The application procedure is the same as that for licenses. However, the Ordinance does not provide for judicial review of a denial. In this respect, the Ordinance does not meet the procedural standards required by *City of Dallas.*

### Procedure for Renewal of Licenses and Permits

Section 11–431 of the Ordinance contains no time limits on the decision to grant a renewal of permits and licenses, nor does it provide for judicial review. This part of the Ordinance is, therefore, procedurally deficient under *City of Dallas.*

### Revocation of Licenses and Permits

The revocation procedure is set out in § 11–432. The Mayor may, for specified reasons, revoke or suspend a license or permit upon ten days written notice. *Id.* § 11–432(b). The licensee or permittee has a right to a hearing before the City Council. *Id.* However, there are no time limits on the

---

4. Plaintiffs contend that somehow the placing of this authority in the hands of the City Treasurer demonstrates that the City's intent is to suppress protected speech. Because the City Treasurer's function in licensing and permitting is purely ministerial, however, this fact is indeed indicative of the opposite conclusion, *i.e.,* that the target of the Ordinance is secondary effects of adult-oriented establishments, not the content of protected speech.

decision to revoke, and it is unclear whether the status quo is maintained pending a decision. *See City of Dallas,* 493 U.S. at 228, 110 S.Ct. at 606. Furthermore, the Ordinance does not provide for judicial review of a decision to revoke a license or permit. In this respect, the Ordinance is constitutionally deficient under *City of Dallas.*

## IV.

■ Among other challenged provisions of the Ordinance is § 11–424 which requires information on the license application about "any stockholder holding more than five (5) percent of the stock of a corporate applicant, or any other person who is interested directly in the ownership or operation of the business." CHATTANOOGA CITY CODE § 11–424(b). Similar provisions have been held to be "impermissibly broad," and therefore not in compliance with the fourth part of the *O'Brien* test. *See East Brooks Books,* 48 F.3d at 226 (holding invalid an ordinance provision requiring that anyone having an ownership interest in a sexually oriented business must sign an application for a permit and meet all qualification requirements). License disclosure requirements for corporate applicants must be directed at those who have a "controlling or significant share" in the corporation. *Id.* The Ordinance's five percent stock ownership provision is, therefore, invalid because it cannot be said with any confidence that five percent stock ownership would represent a controlling interest. The same can be said for § 11–424(b)'s requirement that limited partners of partnership applicants furnish licensing information. Limited partners are not "legally accountable" for the operation of the business. *See id.*

■ Plaintiffs challenge those provisions that set the standards for issuance of licenses (§ 11–425) and permits (§ 11–428). Plaintiffs, however, lack standing to contest these provisions. Plaintiffs are all holders of licenses or permits under the Ordinance. None of the matters specified by the Ordinance as being disqualifying applies to any plaintiff. The plaintiffs, therefore, have not alleged a threat or injury that is real and immediate, as opposed to conjectural or hypothetical. *See Greater Cincinnati Coalition for the Homeless v. City of Cincinnati,* 56 F.3d 710, 715 (6th Cir.1995); *East Brooks Books,* 48 F.3d at 227.

## V.

■ Plaintiffs contend that the Ordinance is unconstitutional because the City, by means of the Ordinance, is selectively regulating only one source of sexual display. Thus, the plaintiffs argue, that the Ordinance transgresses the Equal Protection Clause of the Fourteenth Amendment because only adult-oriented establishments are targeted, and not cable television, adult magazines, adult books, sexual stimulation devices, pornographic movies, et cetera. There are several deficiencies in this argument. First, as this Court has already said, the Ordinance is a permissible incidental and content-neutral regulation of speech directed at conduct which is not speech. There has been no showing in this case that these other local phenomena produce conduct that would justify their regulation by the City. Second, there is no question that a local government may classify adult-oriented establishments differently from other forms of entertainment. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986) (upholding ordinance that distinguished between adult theaters and other kinds of theaters); *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 70–71, 96 S.Ct. 2440, 2452–53, 49 L.Ed.2d 310 (1976) (plurality opinion) ("[W]e hold that the State may legitimately use the content of [erotic] materials as the basis for placing them in a different classification from other motion pictures."); *East Brooks Books,* 48 F.3d at 225 (rejecting contention that ordinance is content based because it targets sexually oriented businesses); *Mitchell v. Commission on Adult Entertainment Establishments,* 10 F.3d 123, 144 n. 22 (3d Cir. 1993) (recognizing that the Supreme Court has held that local governments may regulate adult entertainment establishments and other establishments differently). Third, the Ordinance only deals with adult-oriented establishments as defined therein. It does not purport to regulate pornography or any other business. It, therefore, does not itself

invidiously discriminate between any form of business. In any event, if these other businesses do indeed produce secondary effects that can be regulated in the same manner as adult-oriented establishments, the Equal Protection Clause does not require the City to "choose between attacking every aspect of a problem or not attacking the problem at all." *Dandridge v. Williams,* 397 U.S. 471, 486–87, 90 S.Ct. 1153, 1162–63, 25 L.Ed.2d 491 (1970).

## VI.

In summary, the Ordinance is, with the exception of certain aspects of its licensing and permitting scheme, a valid exercise of Chattanooga's municipal police power to reasonably protect the welfare of its citizens. A judgment will enter.

### *JUDGMENT*

For the reasons expressed in the Court's memorandum filed herewith, Chattanooga's adult-oriented establishment ordinance, Ordinance No. 8601, as amended, is, with certain exceptions, declared to be constitutional. Those exceptions are:

(1) The requirement of § 11–424(b) that license information be submitted by limited partners and by all stockholders holding more than five (5) percent of the stock;

(2) The omission of any provision for prompt judicial review of a permit denial in § 11–428; and

(3) The lack of decisional time limits and judicial review in § 11–431 regarding renewals of licenses and permits; and

(4) Lack of a provision that the status quo will be maintained during a determination of whether a license or permit should be revoked under § 11–432 and lack of a provision for prompt judicial review under this section.

The City of Chattanooga is **ENJOINED,** under the Ordinance as it presently exists, from (1) acquiring license application information from all shareholders of corporate applicants with more than five (5) percent ownership and from limited partners of partnership applicants; (2) denying permits; (3) denying a license or permit renewal; and (4) revoking a license or permit. In all other respects, the plaintiffs' request for an injunction is **DENIED.**

Plaintiffs' application for attorney's fees under 42 U.S.C. § 1988 together with supporting documentation shall be filed with the Court within thirty (30) days of the entry of this judgment. Defendants will have fifteen (15) days to respond thereto.

SO ORDERED.