**VOYEUR DORM, L.C.,
et al., Plaintiffs,**

**v.**

**The CITY OF TAMPA, FLORIDA,
Defendant.**

**No. 8:99–CV–2180–T–24F.**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 7, 2000.

Luke Charles Lirot, Mark R. Dolan, Luke Charles Lirot, P.A., Tampa, FL, for Voyeur Dorm, L.C., Entertainment Network, Inc., Autumn Dawn Marenger, Dan Marshlack, Sharon Gold Marshlack, 2D & K, Inc.

Jerry M. Gewirtz, City Attorney's Office, City of Tampa, Tampa, FL, for City to Tampa, FL.

### ORDER

BUCKLEW, District Judge.

This cause comes before the Court for consideration of Defendant's Motion for Final Summary Judgment (Doc. No. 49, filed July 31, 2000) and Plaintiffs' Dispositive Motion for Summary Judgment (Doc. No. 66, filed July 31, 2000). Each party filed a response in opposition to opposing party's motion for summary judgment (Doc. Nos. 75 & 72, respectively).

### Factual Background

On January 29, 1999, Plaintiffs' counsel, Mark Dolan, sent a letter to the City's Zoning Coordinator requesting her interpretation of the City Code as it applied to the activities occurring at 2312 West Far-

well Drive, Tampa, Florida ("the premises").

On February 12, 1999, the City's Zoning Coordinator, Gloria Moreda, responded to the aforesaid letter and stated in relevant part:

The following generally describes the activities occurring on the property:

1. 5 unrelated women are residing on the premise.

2. 30 internet cameras are located in various rooms in the house; such as the bedrooms, bathrooms, living rooms, shower, & kitchen.

3. For a fee, internet viewers are able to monitor the activities in the different rooms.

4. The web page address is *http://www.voyeurdorm.com/*

5. The web page shows various scenes from the house, including a woman with exposed buttocks. Statements on the page describe activities that can be viewed such as 'The Girls of Voyeur Dorm are fresh, naturally erotic and as young as 18. Catch them in the most intimate acts of youthful indiscretion'.

The web page can be found by going to Yahoo! [a]nd entering 'Voyeurdorm' on the search. The name of the web site is, itself, advertising the adult nature of the entertainment. Voyeur is defined in the *American Heritage Dictionary,* Second College Edition as 'A person who derives sexual gratification from observing the sex organs or sexual acts of others, especially from a secret vantage point'. It is my determination that the use occurring at 2312 W. Farwell Dr., as described in your letter, is an adult use. Section 27–523 defines adult entertainment as:

Any premises, except those businesses otherwise defined in this chapter, on which is offered to members of the public or any persons, for a consideration, entertainment featuring or in any way including specified sexual activities, as defined in this section, or entertainment featuring the displaying or depicting of specified anatomical areas, as defined in this section; 'entertainment' as used in this definition shall include, but not be limited to, books, magazines, films, newspapers, photographs, paintings, drawings, sketches or other publications or graphic media, filmed or live plays, dances or other performances either by single individuals or groups, distinguished by their display or depiction of specified anatomical areas or specified sexual activities, as defined in this section.

Please be aware that the property is zoned RS–60 Residential Single Family and an adult use business is not a permitted use. You should advise your client to cease operation at that location.

Thereafter, on or about April 12, 1999, Dan and Sharon Gold Marshlack[1] appealed the Zoning Coordinator's decision to the City's Variance Review Board. According to the Statement of Administrative Appeal filed by Mr. and Mrs. Marshlack, the section of the City Code which was appealed was "Section 27–523 as interpreted by Gloria Moreda, Zoning [Coordinator], in her letter of February 12, 1999."

Thereafter, on or about July 13, 1999, an appellate hearing was held before the City's Variance Review Board. At the conclusion of the hearing, the Variance Review Board voted unanimously to uphold the Zoning Coordinator's determination in this matter that the use occurring at 2312 West Farwell Drive is an adult use.

Thereafter, on or about July 18, 1999, Mr. and Mrs. Marshlack filed an appeal from the decision of the Variance Review Board to the City Council. Then, on or about August 26, 1999, an appellate hearing was held before Tampa City Council in

---

1. Mr. and Mrs. Marshlack are the owners of the real property located at 2312 West Farwell Drive. They lease the subject property to Voyeur Dorm, L.C.

this matter. At the conclusion of the hearing, City Council voted unanimously to affirm the decision of the Variance Review Board, which had upheld the determination of the Zoning Coordinator.

Thereafter, this action was filed in this Court by Plaintiffs on September 24, 1999. Each party now moves for summary judgment in their favor.

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). When the party moving for the summary judgment bears the burden of persuasion on the issue at trial, its showing must sustain the burden as well as demonstrate the absence of a genuine dispute. *See Celotex Corp.*, 477 U.S. at 331–32, 106 S.Ct. 2548. Therefore, the moving party must satisfy both the initial burden of production on the summary judgment motion, by showing that no genuine dispute exists as to any material fact, and the ultimate burden . of persuasion on the claim, by showing that it would be entitled to a directed verdict at trial. When the party moving for the summary judgment does not bear the burden of persuasion on the issue at trial, the moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim.

*Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is. a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*WSB–TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

### Discussion

There is no dispute that the *website* for Voyeur Dorm involves an adult entertainment business. The two main disputed issues in this action are: (1) whether Plaintiffs use of the premises satisfies all the elements of the definition of an adult use in Section 27–523; and (2) whether the record used to support the adoption of Section 27–523 is sufficient to satisfy constitutional standards in that it did not contemplate Internet-based forms of communication.[2]

■ As to the first issue, Plaintiffs argue that their use of the premises does not satisfy all the elements of the definition of an adult use because it is not a premises *"on which* is offered to members of the public or any persons, for a consideration, entertainment featuring or in any way including specified sexual activities...."* (emphasis added). Plaintiffs argue that no member of the public was ever offered for a consideration any adult entertainment *on* the premises. Instead, the viewing of the activities of the residents by the members of the public "takes place in virtual space, via a global computer network comprised of computer servers primarily located in a office building in downtown Tampa and on other computer servers located throughout the world. Any actual viewing of any computer rendered digital images of the residents takes place in the homes and offices of subscribers to the Voyeur Dorm web site." Affidavit of David G. Marshlack,

¶ 10. Accordingly, Plaintiffs contend that their use of the premises does not constitute an adult use.

It is well established that the plain meaning of a statute or ordinance is the polestar of statutory construction. In *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 119 S.Ct. 755, 760, 142 L.Ed.2d 881 (1999), the United States Supreme Court unanimously held that "As in any case of statutory construction, our analysis begins with the 'language of the statute' ... And where the statutory language provides a clear answer, it ends there as well."

Similarly, the Eleventh Circuit held that " 'In construing a statute we must begin, and often should end as well, with the language of the statute itself.' " *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998) (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir. 1997)), *cert. denied*, 528 U.S. 933, 120 S.Ct. 335, 145 L.Ed.2d 261 (1999).

Accordingly, this Court must apply the plain and unambiguous language of the City Code and may not read language into it that does not appear on its face. There is no language in the City Code that expressly states a requirement that the members of the public paying consideration be *on* the premises viewing the adult entertainment. The plain language of the City Code includes any premises "on which is offered to members of the public or any persons, for a consideration, entertainment featuring or in any way including specified sexual activities...." The premises at 2312 West Farwell Drive is clearly a premises on which is offered to members of the public for consideration entertainment featuring specified sexual activities under the plain meaning of the City Code. To con-

---

**2.** It is undisputed that the premises is located in a district zoned RS–60 Residential Single Family. Under the City Code, adult uses are not permitted in a district zoned RS–60 Residential Single Family, and, in fact, are expressly prohibited in a residential district zoned RS–60. Adult uses are permitted only in the CI, IG and IH districts. Moreover, in order to obtain approval of an S–1 permit for an adult use in the CI, IG and IH districts, it is necessary for the applicant to satisfy the specific standards set forth under § 27–272 for an adult use including the distance separation requirement that "[n]o adult use shall be located within five hundred (500) feet of any residential or office district." Section 27–272 of the City Code.

strue the City Code otherwise would require that this Court read language into the City Code requiring that the members of the public be present at the premises.

This Court also takes into consideration that, as a matter of zoning law, the City is entitled to protect and improve the quality of residential neighborhoods. Indeed, the Eleventh Circuit has noted that the "Supreme Court has held restrictions may be imposed to protect 'family values, youth values and the blessings of quiet seclusion.'" *Corn v. City of Lauderdale Lakes,* 997 F.2d 1369, 1375 (11th Cir.1993) (quoting *Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974)[3]), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994).

■ In addition, the Court notes that the law is well established that an agency's interpretation of a statute that is charged with enforcing it is entitled to great weight and deference. In fact, a reviewing court may not overturn an agency's interpretation of a statute that is charged with administering a statute unless the agency's interpretation is clearly erroneous. *See Department of Health & Rehabilitative Serv. v. A.S.,* 648 So.2d 128, 132 (Fla.1995); *PW Ventures, Inc. v. Nichols,* 533 So.2d 281, 283 (Fla.1988).

> When an agency with authority to implement a statute construes the statute in a permissible way, that interpretation must be sustained even though another interpretation may be possible. Since [the city's] interpretation was entitled to such great weight and was not shown to be clearly erroneous, the trial court erred by not accepting the city's interpretation....

*Seibert v. Bayport Beach & Tennis Club Ass'n,* 573 So.2d 889, 892 (Fla. 2d DCA 1990) (citations omitted), *rev. denied,* 583 So.2d 1034 (Fla.1991). This Court cannot find that the Zoning Coordinator's determination was clearly erroneous.

The second issue before this Court is the Plaintiffs' argument that there was an improper predicate for the adoption of the City's adult use ordinance and/or that there are no secondary effects created by the premises in question.

■ It is well established that the regulation of adult entertainment businesses has to serve a legitimate governmental interest such as the prevention of adverse secondary effects caused by the adult entertainment establishments. *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). Plaintiffs argue that there is significant doubt as to the validity of the City's record, particularly as it relates to any Internet-based "e-commerce" form of communication, because there is no possible way that the characteristics of this form of communication could have been considered at the time the City of Tampa considered the record upon which it relied in adopting the adult use ordinance. Plaintiffs further argue that there is no evidence of secondary effects occurring at 2312 West Farwell Drive.

The Eleventh Circuit has held that the evidence of *actual* adverse secondary effects was of no moment. *International Eateries of Am., Inc. v. Broward County,* 941 F.2d 1157 (11th Cir.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992). "[Plaintiff] further argues that

---

**3.** In *Village of Belle Terre v. Boraas,* where the Supreme Court upheld the constitutional validity of an ordinance which prohibited more than two unrelated persons from living in the same dwelling, the Court stated that "[t]he police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values and the blessings of quiet seclusion and clean air make the area a sanctuary for people." *Boraas,* 416 U.S. at 9, 94 S.Ct. 1536. The Supreme Court's decision in *Bo-*

*raas* has subsequently been cited with favor in numerous cases including, but not limited to, *Farrell v. City of Miami,* 587 F.Supp. 413, 416 (S.D.Fla.1984) (wherein the court upheld the validity of an ordinance limiting the commercial use of a residentially zoned property), *aff'd,* 758 F.2d 658 (11th Cir.1985). In *Farrell,* the court made clear that an ordinance which seeks to protect residential neighborhoods by limiting commercial uses of a house has been recognized as a proper restriction on the use of residential property.

there is uncontradicted evidence in the record that Thee Dollhouse III has not in fact caused any adverse effects on surrounding property values and that property values have actually increased at a higher rate than before the opening of Thee Dollhouse III. *This argument hold no weight.*" *Id.* at 1163 (emphasis added).

Similarly, in *T–Marc, Inc. v. Pinellas County,* 804 F.Supp. 1500 (M.D.Fla.1992), the court held that the County of Pinellas was not required to actually experience adverse secondary effects from adult use establishments prior to enacting an ordinance restricting the location of such adult use establishments. The court held in relevant part:

> Plaintiffs contend that . . . the county failed to recognize evidence which rebutted the existence of such ̇adverse secondary effects. This argument fails under *International Eateries of Am., Inc. v. Broward County,* 941 F.2d 1157 (11th Cir.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1294, 117 L.Ed.2d 517 (1992). In *International Eateries,* the plaintiff failed to invalidate distance ordinances even where uncontradicted evidence existed that the [adult use establishments] had not in fact caused any adverse effects on surrounding property values and that the property values had actually increased at a higher rate than before the opening of the [adult use establishments]. *Id.* at 1163. Thus, this Court adopts the finding that the County is not required to actually experience the secondary effects prior to enacting the ordinance. Rather, the County may rely on the secondary effects suffered by other cities.

*T–Marc,* 804 F.Supp. at 1503–04 (citations omitted).

Similarly, in *Cafe 207, Inc. v. St. Johns County,* 856 F.Supp. 641 (M.D.Fla.1994), *aff'd per curiam,* 66 F.3d 272 (11th Cir. 1995), *cert. denied,* 517 U.S. 1156, 116 S.Ct. 1544, 134 L.Ed.2d 647 (1996), where "Plaintiff vigorously argue[d] that a trial [was] necessary to explore and decide fact

issues relating to . . . whether there are, in actuality, any adverse secondary effects of adult entertainment establishments," the court expressly rejected the plaintiff's argument. *Id.* at 644. The court stated in relevant part that "[e]vidence about secondary effects or, rather, the lack of them, is . . . clearly foreclosed." *Id.* at 645. Accordingly, the Plaintiffs' expert reports regarding the secondary effects of the subject premises, or lack thereof, are irrelevant to this Court's analysis, and there is no merit to Plaintiffs' argument that there are no *actual* secondary effects from the activities at the premises.

■ As for the issue of whether the predicate for the adoption of the adult use ordinance was proper or not, as it relates to any Internet-based "e-commerce" form of communication, because it could not have specifically taken into consideration the characteristics of this form of business at the time the adult use ordinance was adopted, the following case law is instructive. In *Sammy's of Mobile, Ltd. v. City of Mobile,* 140 F.3d 993 (11th Cir.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 1553, 146 L.Ed.2d 459 (2000), the Eleventh Circuit, quoting *Cafe 207,* stated:

> "It is now established as a matter of law by Supreme Court jurisprudence culminating in [*Barnes*[4]] that secondary effects of proscribed conduct may be taken into consideration by a court evaluating the governmental interests justifying impingement upon free speech rights even when, as in *Barnes,* there is no legislative history demonstrating that the lawmakers actually considered secondary effects or any other specific factor (such as protecting order and morality) in enacting the challenged law."

*Sammy's,* 140 F.3d at 997 n. 6 (quoting *Cafe 207,* 856 F.Supp. at 645).

The Supreme Court in *City of Erie v. Pap's A.M.,* 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), has also discussed the appropriateness of a court giving the

**4.** *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991).

lawmakers leeway in justifying a law based on secondary effects.

> [T]he government should have sufficient leeway to justify such a law based on secondary effects. On this point, O'Brien[5] is especially instructive. The Court there did not require evidence that the integrity of the Selective Service System would be jeopardized by the knowing destruction or mutilation of draft cards. It simply reviewed the Government's various administrative interests in issuing the cards, and then concluded that "Congress has a legitimate and substantial interest in preventing their wanton and unrestrained destruction and assuring their continuing availability by punishing people who knowingly and willfully destroy or mutilate them." 391 U.S., at 378–380, 88 S.Ct. 1673. There was no study documenting instances of draft card mutilation or the actual effect of such mutilation on the Government's asserted efficiency interests. But the Court permitted Congress to take official notice, as it were, that draft card destruction would jeopardize the system. The fact that this sort of leeway is appropriate in a case involving conduct says nothing whatsoever about its appropriateness is a case involving actual regulation of First Amendment expression.[6] As we have said, so long as the regulation is unrelated to the suppression of expression, "[t]he government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." Texas v. Johnson, 491 U.S., at 406, 109 S.Ct. 2533. See, e.g., United States v. O'Brien, supra, at 377, 88 S.Ct. 1673; United States v. Albertini, 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985) (finding sufficient the Government's assertion that those who had previously been barred from entering the military installation pose a threat to the security of that installation); Clark v. Community for Creative Non-Violence, 468 U.S., at 299, 104 S.Ct. 3065 (finding sufficient the Government's assertion that camping overnight in the park poses a threat to park property).

City of Erie, 120 S.Ct. at 1396; see also Ward v. County of Orange, 217 F.3d 1350, 1353 (11th Cir.2000) (citing City of Erie with favor).

■ "[I]t is well established that, as long as a party has an opportunity to respond, an administrative agency may take official notice of such 'legislative facts' within its special knowledge, and is not confined to the evidence in the record in reaching its expert judgment." City of Erie, 120 S.Ct. at 1395.

Based on this case law, there can be no finding that there was an improper predicate for the adoption of the City's adult use ordinance simply because the lawmakers could not have considered the specific characteristics of Internet-based e-commerce at the time of the adoption of the adult use ordinance. Even though the studies relied upon did not evaluate the secondary effects of Internet-based "e-commerce" adult entertainment businesses, the studies did evaluate secondary effects that are similarly applicable to an adult entertainment business connected to its customers via the Internet. The City need not prove that Plaintiffs' business would likely have the exact same adverse effects on its surroundings as the adult businesses previously studied. So long as the adult use ordinance affects only categories of businesses reasonably believed to produce at least some of the unwanted secondary effects, the City must be al-

---

5. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

6. This case is clearly one in which conduct is being regulated, not First Amendment expression. The adult use ordinance does not attempt to regulate the primary effects of expression, i.e., the effect on the audience of watching adult entertainment, but rather the secondary effects, such as the impacts on public health, safety, and welfare. See City of Erie, 120 S.Ct. at 1392; City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47–48, 50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).

 

lowed a reasonable opportunity to experiment with solutions to admittedly serious problems. *American Mini Theatres,* 427 U.S. at 71, 96 S.Ct. 2440; *ILQ Inv., Inc. v. City of Rochester,* 25 F.3d 1413, 1418 (8th Cir.), *cert. denied,* 513 U.S. 1017, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994).

The Supreme Court has held that a city's interest in protecting the quality of urban life from the secondary effects of adult businesses serves a substantial governmental interest. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 50, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The Supreme Court also held that a city is not required to conduct new studies or produce evidence independent of that already generated by other cities so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses. *Id.* at 53, 106 S.Ct. 925.

"[A] city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'" *City of Renton,* 475 U.S. at 50, 106 S.Ct. 925 (quoting *American Mini Theatres,* 427 U.S. at 71, 96 S.Ct. 2440). It is well established that the regulation of public health, safety and morals is a valid and substantial state interest. *Sammy's,* 140 F.3d at 996–97. This Court finds that the City had a reasonable basis for believing that its adult use ordinance would serve its substantial governmental interest and that substantial governmental interest is applicable to the adult use occurring at 2312 West Farwell Drive.[7]

Because this Court finds that the activities occurring at 2312 West Farwell Drive constitute an adult use pursuant to the City Code and that the City Code is based upon a proper predicate and is justified based on secondary effects, the remaining claims raised by Plaintiffs' complaint are meritless.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Final Summary Judgment (Doc. No. 49) is **GRANTED.** Defendant's request for attorney's fees is **DENIED.** The Clerk is directed to enter judgment in favor of the Defendant and **CLOSE** this case.

7. This Court, in *Specialty Malls of Tampa v. City of Tampa,* 916 F.Supp. 1222 (M.D.Fla. 1996), *aff'd,* 109 F.3d 770 (11th Cir.1997), wherein plaintiffs' counsel also argued that there was an improper predicate for the adoption of the adult use ordinance, expressly rejected this argument and granted the City's motion for summary judgment stating:

The Court finds that the City of Tampa laid a proper predicate for adoption of the Ordinance. The Ordinance notes that the locational criteria pertaining to adult uses "was initially adopted based on studies presented at previous public hearings demonstrating such uses have deleterious effects on adjacent property...."
*Id.* at 1230.