**[PUBLISH]**

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 21, 2001
THOMAS K. KAHN
CLERK

No. 00-16346

D. C. Docket No. 99-02180-CV-T-24F

VOYEUR DORM, L.C., a Florida limited liability company,
ENTERTAINMENT NETWORK, INC., a Florida corporation, et al.,

Plaintiffs-Appellants,

DAN MARSHLACK,
SHARON GOLD MARSHLACK,

Plaintiffs,

versus

CITY OF TAMPA, FL, a Florida municipal corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

(September 21, 2001)

Before TJOFLAT, DUBINA and DUHE*, Circuit Judges.

_____
*Honorable John M. Duhe, Jr., U.S. Circuit Judge for the Fifth Circuit, sitting by designation.
DUBINA, Circuit Judge:

This appeal arises from Voyeur Dorm L.C.'s ("Voyeur Dorm") alleged violation of Tampa's City Code based on the district court's characterization of Voyeur Dorm as an adult entertainment facility. Because we conclude the district court misapplied Tampa's City Code because it erroneously found that Voyeur Dorm offered adult entertainment to the public at the residence in question, we reverse the judgment of the district court.

## I. BACKGROUND

As alleged in its complaint, Voyeur Dorm is a Florida limited liability company that maintains offices and conducts its business in Hillsborough County, Florida. Voyeur Dorm operates an internet based web site that provides a 24 hour a day internet transmission portraying the lives of the residents of 2312 West Farwell Drive, Tampa, Florida. Throughout its existence, Voyeur Dorm has employed 25 to 30 different women, most of whom entered into a contract that specifies, among other things, that they are "employees," on a "stage and filming location," with "no reasonable expectation of privacy," for "entertainment purposes." Subscribers to "voyeurdorm.com" pay a subscription fee of $34.95 a month to watch the women employed at the premises and pay an added fee of $16.00 per month to "chat" with the women. From August 1998 to June 2000, Voyeur Dorm generated subscriptions and sales totaling $3,166,551.35.

In 1998, Voyeur Dorm learned that local law enforcement agencies had initiated an investigation into its business. In response, counsel for Voyeur Dorm sent a letter to Tampa's Zoning Coordinator requesting her interpretation of the City Code as it applied to the activities occurring at 2312 West Farwell Drive. In February of 1999, Tampa's Zoning Coordinator, Gloria Moreda, replied to counsel's request and issued her interpretation of the City Code, concluding in relevant part:

> The following generally describes the activities occurring on the property:
>
> 1. 5 unrelated women are residing on the premises.
> 2. 30 Internet cameras are located in various rooms in the house; such as the bedrooms, bathrooms, living rooms, shower and kitchen.
> 3. For a fee, internet viewers are able to monitor the activities in the different rooms.
> 4. The web page address is http://www.voyeurdorm.com/
> 5. The web page shows various scenes from the house, including a woman with exposed buttocks. Statements on the page describe activities that can be viewed such as "the girls of Voyeur Dorm are fresh, naturally erotic and as young as 18. Catch them in the most intimate acts of youthful indiscretion."
>
> The web page can be found by going to Yahoo! and entering 'Voyeurdorm' on the search. The name of the website is, itself, advertising the adult nature of the entertainment. Voyeur is defined in the American Heritage Dictionary, Second College Edition as "A person who derives sexual gratification from observing the sex organs or sexual acts of others, especially from a secret vantage point."

3

It is my determination that the use occurring at 2312 W. Farwell Dr., as described in your letter, is an adult use. Section 27-523 defines adult entertainment as: "Any premises, except those businesses otherwise defined in this chapter, on which is offered to members of the public or any person, for a consideration, entertainment featuring or in any way including specified sexual activities, as defined in this section, or entertainment featuring the displaying or depicting of specified anatomical areas, as defined in this section; 'entertainment' as used in this definition shall include, but not be limited to, books, magazines, films, newspapers, photographs, paintings, drawings, sketches or other publications or graphic media, filmed or live plays, dances or other performances distinguished by their display or depiction of specified anatomical areas or specified anatomical activities, as defined in this section."

Please be aware that the property is zoned RS-60 Residential Single Family, and an adult use business is not permitted use. You should advise your client to cease operation at that location.

Thereafter, in April of 1999, Dan and Sharon Gold Marshlack[1] appealed the Zoning Coordinator's decision to Tampa's Variance Review Board. On or about July 13, 1999, the Variance Review Board conducted a hearing. At the hearing, Voyeur Dorm's counsel conceded the following: that five women live in the house; that there are cameras in the corners of all the rooms of the house; that for a fee a person can join a membership to a web site wherein a member can view the women 24 hours a day, seven days a week; that a member, at times, can see someone disrobed; that the women receive free room and board; that the women

---

[1] Mr. and Mrs. Marshlack are the owners of the real property located at 2312 West Farwell Drive. They lease the subject property to Voyeur Dorm.

are part of a business enterprise; and that the women are paid. At the conclusion of the hearing, the Variance Review Board unanimously upheld the Zoning Coordinator's determination that the use occurring at 2312 West Farwell Drive was an adult use. Subsequently, Mr. and Mrs. Marshlack filed an appeal from the decision of the Variance Review Board to the City Council. The Tampa City Council held a hearing in August of 1999, at the conclusion of which the City Council unanimously affirmed the decision of the Variance Review Board.

Voyeur Dorm filed this action in the middle district of Florida. The City of Tampa and Voyeur Dorm then filed cross-motions for summary judgment. The district court granted Tampa's motion for summary judgment, from which Voyeur Dorm now appeals.

## II. ISSUES

1. Whether the district court properly determined that the alleged activities occurring at 2312 West Farwell Drive constitute a public offering of adult entertainment as contemplated by Tampa's zoning restrictions.

2. Whether the district court properly relied on the negative secondary effects doctrine in determining the constitutionality of Tampa's zoning restrictions as applied to 2312 West Farwell Drive.

3. Whether the predicate evidence that Tampa relied upon to adopt its adult use

5

restrictions must contemplate internet forms of communication in order to restrict internet forms of communication.

## III.  STANDARD OF REVIEW

This court reviews the district court's grant of a motion for summary judgment *de novo*, applying the same legal standards used by the district court. *Sammy's of Mobile, Ltd. v. City of Mobile,* 140 F.3d 993, 995 (11th Cir. 1998).

## IV.  DISCUSSION

The threshold inquiry is whether section 27-523 of Tampa's City Code applies to the alleged activities occurring at 2312 West Farwell Drive.  Because of the way we answer that inquiry, it will not be necessary for us to analyze the thorny constitutional issues presented in this case.

Section 27-523 defines adult entertainment establishments as

> [a]ny premises, except those businesses otherwise defined in this chapter, on which is offered to members of the public or any person, for a consideration, entertainment featuring or in any way including specified sexual activities, as defined in this section, or entertainment featuring the displaying or depicting of specified anatomical areas, as defined in this section; 'entertainment' as used in this definition shall include, but not be limited to, books, magazines, films, newspapers, photographs, paintings, drawings, sketches or other publications or graphic media, filmed or live plays, dances or other performances either by single individuals or groups, distinguished by their display or depiction of specified anatomical areas or specified sexual activities, as defined in this section.

Tampa argues that Voyeur Dorm is an adult use business pursuant to the express and unambiguous language of Section 27-523 and, as such, cannot operate in a residential neighborhood. In that regard, Tampa points out: that members of the public pay to watch women employed on the premises; that the Employment Agreement refers to the premises as "a stage and filming location;" that certain anatomical areas and sexual activities are displayed for entertainment; and that the entertainers are paid accordingly. Most importantly, Tampa asserts that nothing in the City Code limits its applicability to premises where the adult entertainment is actually consumed.

In accord with Tampa's arguments, the district court specifically determined that the "plain and unambiguous language of the City Code . . . does not expressly state a requirement that the members of the public paying consideration be *on* the premises viewing the adult entertainment." *Voyeur Dorm, L.C., et al., v. City of Tampa*, No. 99-2180 (M.D. Fla. Nov. 6, 2000) (order granting summary judgment to Tampa). While the public does not congregate to a specific edifice or location in order to enjoy the entertainment provided by Voyeur Dorm, the district court found 2312 West Farwell Drive to be "a premises on which is offered to members of the public for consideration entertainment featuring specified sexual activities within the plain meaning of the City Code." *Id.*

Moreover, the district court relied on Supreme Court and Eleventh Circuit precedent that trumpets a city's entitlement to protect and improve the quality of residential neighborhoods. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986) ("[A] city's 'interest in attempting to preserve the quality of urban life is one that must be accorded high respect.'") (quoting *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 71 (1976)); *Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993, 996-97 (11th Cir. 1998) (noting that it is well established that the regulation of public health, safety and morals is a valid and substantial state interest); *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369, 1375 (11th Cir. 1993) (noting that the "Supreme Court has held [that] restrictions may be imposed to protect 'family values, youth values and the blessings of quiet seclusion'") (internal citations omitted).

In opposition, Voyeur Dorm argues that it is not an adult use business. Specifically, Voyeur Dorm contends that section 27-523 applies to locations or premises wherein adult entertainment is actually offered to the public. Because the public does not, indeed cannot, physically attend 2312 West Farwell Drive to enjoy the adult entertainment, 2312 West Farwell Drive does not fall within the purview of Tampa's zoning ordinance. We agree with this argument.

The residence of 2312 West Farwell Drive provides no "offer[ing] [of adult

8

entertainment] to members of the public." The offering occurs when the videotaped images are dispersed over the internet and into the public eye for consumption. The City Code cannot be applied to a location that does not, itself, offer adult entertainment to the public. As a practical matter, zoning restrictions are indelibly anchored in particular geographic locations. Residential areas are often cordoned off from business districts in order to promote a State's interest. *See e.g., City of Renton*, 475 U.S. at 50 ("A city's interest in attempting to preserve the quality of urban life is one that must be accorded high respect."). It does not follow, then, that a zoning ordinance designed to restrict facilities that offer adult entertainment can be applied to a particular location that does not, at that location, offer adult entertainment. Moreover, the case law relied upon by Tampa and the district court concern adult entertainment in which customers *physically attend* the premises wherein the entertainment is performed.[2] Here, the audience or

---

[2] The body of case law applying legislative restrictions to adult entertainment establishments relies on adverse effects that debase adjacent properties. *See, e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000) (relying on the negative secondary effects doctrine to uphold a city's ordinance as applied to an erotic dancing establishment); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) (upholding a zoning ordinance that prohibited adult motion picture theaters from operating in certain locations based upon the negative secondary effects created by such theaters); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976); *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976 (11th Cir. 2001) (holding that a local ordinance failed to further the county's purported concern with negative secondary effects and was thus unconstitutionally applied); *Ward v. County of Orange*, 217 F.3d 1350 (11th Cir. 2000); *Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993 (11th Cir. 1998); *Krueger v. City of Pensacola*, 759 F.2d 851 (11th Cir. 1985).

9

consumers of the adult entertainment do not go to 2312 West Farwell Drive or congregate anywhere else in Tampa to enjoy the entertainment. Indeed, the public offering occurs over the internet in "virtual space."[3] While the district court read Section 27-523 in a literal sense, finding no requirement that the paying public be *on the premises*, we hold that section 27-523 does not apply to a residence at which there is no public offering of adult entertainment. Accordingly, because the district court misapplied section 27-523 to the residence of 2312 West Farwell Drive, we reverse the district court's order granting summary judgment to Tampa. Since the resolution of this threshold issue obviates the need for further analysis, we do not reach the remaining issues regarding the constitutionality of Tampa's zoning restrictions as applied to Voyeur Dorm.

**REVERSED.**

---

[3] *See Reno v. ACLU,* 521 U.S. 844, 851 (1997) (stating that internet communication is "a unique medium – known to its users as 'cyberspace' – located in no particular geographical location but available to anyone, anywhere in the world, with access to the Internet").